STEWART W. PRICE *vs.* ALEXANDER MCEACHERN et al.

Kennebec.   Opinion May 5, 1914.

*Assumpsit.   Check.   Exceptions.   Instructions.   Motion.   Ordinary Work.*
*Per Diem.   Settlement.*

1.   When the offer of money or check is made upon the condition that the other parties accept it in full payment of the claim in controversy, they are bound by the condition.
2.   The party to whom the offer is made can accept or reject the offer upon his own volition, but cannot change its terms.
3.   He cannot accept part of it and reject part of it.   It is an entirety.
4.   If he uses the money or check upon the terms prescribed by the debtor, it is an acceptance, precisely as it would be if he had used any commodity upon condition that if he kept it, he should pay a certain price for it.
5.   The use of the money, or check, would be an implied acceptance of the condition of payment.
6.   In order to make a payment in full by money or check in this way, there must be proof of a new contract upon which the check or money is offered and used, and the burden is upon the defendants to prove the new contract which they set up in defense.

On motion and exceptions by the defendant.   Exceptions overruled.   Motion sustained, unless within thirty days from the certifying of this case, the plaintiff file a remittitur of the verdict to $72.47 and interest from April 24 to September 10, 1912.

This is an action of assumpsit brought in the Superior Court for Kennebec County and tried in said court at the September Term thereof, 1912.   In this case, the plaintiff sues to recover the sum of $111.00 for labor.   The defendant excepted to certain portions of the Judge's charge to the jury, particularly notice in the opinion. The defendant pleaded the general issue.

A verdict was returned by the jury for the plaintiff for $105.39, and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*F. W. Clair,* for plaintiff.

*Williamson, Burleigh & McLean,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHIL-
BROOK, JJ.

SPEAR, J.   This is an action of assumpsit, tried in the Superior
Court, in which the plaintiff seeks to recover of the defendants the
balance alleged to be due him for labor performed for the defend-
ants.   The defendants are lumbermen and operated a camp in
Bowdoin Township during the winter of 1911 and 1912.   In the
fall of 1911 the plaintiff, who had been in the defendants' employ
about four years before, was hired by them with the understanding
that he should do "ordinary work" until they came to use their log
hauler, when he was to act on that as engineer.   The plaintiff testi-
fied that there was no understanding as to what he should receive
for the "ordinary work" but that it was agreed that he should
receive the same wages which he had "received before" for working
on the log hauler.

The defendants denied any such agreement and testified that no
wages were set with the plaintiff at the time he entered their employ
but that just before beginning work on the log hauler it was agreed
that he should receive both for the "ordinary work" and his work
as engineer the same wages that defendants were paying their other
help for similar services.   It is not in controversy that they were
paying for "ordinary work" $30.00 per month and their engineers,
$3.00 per day.   The plaintiff makes no question regarding the
amount he was to receive for ordinary work but claims that he was
entitled under his agreement to $4.00 a day while employed as
engineer upon the log hauler, the same per diem he had received
before from these same defendants for similar work.   That the
plaintiff received $4.00 a day for his former employment upon the
log hauler is sufficiently proven.   Accordingly, the only controversy
upon this feature of the agreement is whether it was understood
that the plaintiff was to receive the same wages he had "received
before" or the same wages the defendants were paying their other
help for similar services.   Nor is there any controversy that the
defendants were paying their engineers on the log hauler $3.00 per
day.   Whether this agreement was as claimed by the plaintiff or
as claimed by the defendants, was a pure question of fact, which
the jury found in favor of the plaintiff.   That is, the jury found

that the plaintiff was entitled to $4.00 a day. And we do not think it is so clearly wrong as to require us to disturb the verdict upon this issue.

But the defendants contend that, even though the plaintiff was entitled to $4.00 a day for his services on the log hauler, they paid him by check at the rate of $3.00, under such circumstances as to compel the legal conclusion, that the plaintiff received the check in full settlement for all that was due him; and upon refusal of the presiding Judge, at the close of the testimony, to order a verdict upon the theory of such a settlement, exceptions were taken and allowed. Exceptions were also taken to specific parts of the charge of the Judge upon this question, but we think the exception to the refusal to direct a verdict for defendant raises every legal question in issue. Under the verdict of the jury, in determining what took place at the time of the alleged settlement, we should give full credit to the testimony of the plaintiff. His testimony upon this point is found upon cross examination and is as follows: Q. Now, on what day did you settle with the defendants? A. I think the 27th day of March. Q. Were the defendants settling with all their help at that time? A. I think so. Most of it, anyhow. Q. Just how did they settle? What was the procedure they went through? A. Well, they paid them a check in there—they paid them off with a check. Q. How did they determine how much was due them? A. I didn't see them settle with no man. Q. How did they settle with you? A. They wrote me out a check; they said my bill was $106.00, and they wrote me a check. Q. Who wrote the check? A. I think the younger Mr. McEachern, Collin. Q. So, as a matter of fact, the clerk read off the time in your presence, didn't he? A. No. He told me it was 120 days. Q. Did he read off all your time at that time? A. That wasn't all of it. Q. Didn't the clerk at that time read off to you all your time as it appeared upon his books? A. I couldn't say. I didn't see his books. Q. What did you say to them, anything? A. I told him that he promised to pay me the same as he paid me before, $4.00 a day. Q. What did he say? A. He said he was to pay me the same as he paid the other man, or something to that effect. I didn't know what the other man got, so I didn't know what I was getting as he told it. Q. How much did he say he would pay you? A. $3.00 a day. Q.

And he gave you a check in full settlement at $3.00 a day? A. No, sir. Q. What did he do? A. He wrote a check and handed it to me before any talk was made. Q. Didn't he say it was in full settlement? A. No, sir, he didn't say it. Q. What did he say? A. I told him that was a mistake, that the pay was not right, that he was to pay me $4.00 a day, what he paid me before. He said no, he didn't say so, and the team was standing at the door, and to tell the truth I was crippled so that I could not walk. I had strained myself the Sunday before, and I could not have walked out, and it was a case of settle or walk, and I thought we were so far apart that we would not come together, and I started. Q. When did you say that, before or after he handed you the check. A. After. He didn't say what he would pay me. Q. Wasn't the check written out by the young Mr. McEachern pursuant to the time given him by the clerk? A. I think so. Q. You knew when you took the check that it was in full settlement according to their books, didn't you? A. No, I didn't know. It didn't look to be full settlement to me. Q. You knew that they gave it to you in full settlement? A. No, sir, I didn't. I thought they were trying to beat me out of a winter's work. Q. Did you tell them so? A. I told them so afterwards. I didn't make any conversation then. Q. You did not give the check back to them? A. No, sir, he didn't ask me. Q. You accepted it? A. I was to Moosehead Lake and had to have something to get home with.

Upon this testimony and, of course, the testimony of the defendants the Judge instructed the jury. "If you come to the conclusion under all this testimony that there was an understanding between both these parties, the plaintiff and the defendant, that the check was given in full settlement of all matters up to that time in full payment of his wages and was accepted by the plaintiff at that time in full settlement of all due him for his wages, that is the end of the case and you need not consider these other questions. On the other hand, if you come to the conclusion that the check was not accepted by the plaintiff as full settlement, if he called the attention of the defendants at that time to the fact that he was not receiving his compensation of $4.00 a day, as he expected it, and that he simply took that check as part payment, then there was no settlement, and you should go on to the other points of the case, as I have indi-

cated." The defendants say that this quotation is subject to exceptions in at least two particulars: "(1) It requires the defendants in order to prove a settlement to show something more than an acceptance of the check with full knowledge that it was given in full settlement; and (2) it permits the plaintiff to accept the check offered in full settlement and apply it on account, provided he called the defendants' attention to the fact that he took it as part payment." Under the first particular the defendants claim that "the inference is that words of assent were necessary;" under the second particular, that the court in substance says that, "calling the attention of the defendants . . . to the fact that he was not receiving his compensation of $4.00 a day, as he expected, and that he simply took the check as part payment," would amount to a non-acceptance of the check, notwithstanding the fact that the plaintiff took and kept the check with knowledge that it was offered in full settlement. In other words, defendants claim the rule of law to be (1), that money taken on condition though without words of assent is taken subject to the conditions; and (2), that a party accepting a check offered in full settlement is bound by the conditions although protesting that he does not accept it in full. In support of this contention, *Anderson* v. *Standard Granite Co.,* 92 Maine, 429, is cited. This opinion says: "The amount having been offered in full settlement, and having been accepted as such, impliedly at least, the plaintiff can not treat this sum as a payment pro tanto and recover the balance as due on the original claim."

As we understand this case, and the other cases cited by the defendants, they hold, where the offer of money or a check is made upon the condition that the other parties accept it in full payment of the claim in controversy, they are bound by the condition. This rule of law, when analyzed, involves a simple principle of contract. The debtor says, "I will give you this check or pay you this amount of money on condition you accept it in full payment of your claim." By this language, a contract entirely independent of the original controversy is offered to the creditor. He can accept or reject it upon his own volition, but he cannot change its terms. He cannot accept part of it and reject part of it. It is an entirety. If he uses the money or the check, upon the terms prescribed by the debtor, it is an acceptance, precisely as it would be if he had used a barrel

of flour, upon condition that if he kept it he should pay a certain price. The use of the flour would be an implied acceptance of the contract of sale, precisely as his use of the money or check would be an implied acceptance of the condition of payment. This is undoubtedly the law. From this brief analysis, it appears perfectly clear that to make a payment in full by money or check in this way there must be proof of a new contract upon which the check or money is offered and used. *Fuller* v. *Smith,* 107 Maine, 161, is a case in which a check was tendered to a creditor. "in full satisfaction of his claim for damages for breach of a contract of employment, as well as the payment of the balance due him for wages and expenses;" and was claimed to have been "tendered under such circumstances or accompanied with such declarations that the plaintiff knew, or was bound to know therefrom, that it was tendered on such condition." The principle involved in this case is precisely the same as that involved in the case at bar; that is, the defendants claimed that they tendered a new contract by offering the check on condition, which the plaintiff accepted. Yet the court say: "The proof should be clear and convincing that the creditor did understand the condition on which the tender was made, or that the circumstances under which it was made were such that he was bound to understand it. If the debtor undertakes to state the condition on which he makes the tender, his statement should be explicit, and all uncertainty and doubt should be resolved against him." The cases cited by the defendants contain written proof that the check or money, if accepted, was in full payment. The contract of acceptance was made clear. But in the case at bar no such evidence appears. The testimony does not show that the defendants presented any new contract or prescribed any conditions, upon the offer of the check to the plaintiff. The only suggestion of this kind in the exceptions is found in the following question and answer by one of the defendants: Q. He accepted the check in full payment? A. Yes, sir. This, of course, is not proof of such acceptance as, what is the meaning of "acceptance in full payment" is the very question in issue. And the rest of the evidence of Collin W. McEarchern, in which he describes what took place, does not even intimate that he informed the plaintiff of any condi-

tion. Nor does the evidence of his clerk. The burden was on the defendants to prove the new contract, which they set up as a defense.

The cases cited, therefore, do not apply to the facts in the case at bar for two reasons. (1) The evidence above quoted, and upon which the jury had a right to rely, does not impose any condition of payment in full, upon acceptance. (2) There are no circumstances, attending the delivery of the check, from which could be inferred an implied acceptance on the part of the plaintiff; but testimony directly in contradiction of such inference. The evidence clearly shows that the plaintiff took this check under stress of circumstances. He was far in the woods; lame; unable to walk out; the team was waiting; his only visible way of getting out; he was through work and apparently without money; he wanted to get home. The testimony of the defendants corroborates these facts. When they passed him his check there was no time for controversy, and his explanation of why he took the check, is straight-forward and reasonable. He says: "I strained myself the Sunday before, and I could not have walked out, and it was a case of settle or walk, and I thought we were so far apart that we could not come together and I started." Under these circumstances, and upon this statement, neither an actual nor an implied acceptance of the check in full payment of plaintiff's claim can be justly or fairly inferred. But *Anderson* v. *Standard Granite Co.,* supra, requires proof of an offer and an acceptance, express or implied; the amount must be "offered in full settlement" and be "accepted as such, impliedly, at least." See also *Chapin* v. *Little Blue School,* 110 Maine, 415, in which a check was sent accompanied by a letter, saying: "Please find check . . . which it is hoped will be accepted by you as a just settlement of your son's account." The creditor wrote saying if he didn't hear from the debtor to the contrary he would assume he could use the check on account. To this he received no reply. But the court held that the use of the check did not operate as an accord and satisfaction and declared on page 421: "The evidence shows no agreement or intention on the part of the plaintiff to accept the check in full satisfaction. It shows no agreement or compromise and no accord and satisfaction." The receipt of a check purporting to be for the balance of an account, and the use

of it, in the absence of an agreement to accept in payment in full is not an accord and satisfaction. *Tompkins* v. *Hill,* 145 Mass., 379. Inasmuch, therefore, as the evidence does not show that the defendants imposed, upon offering this check, the condition that it should be received as payment in full, nor that there was an acceptance of it as such, the instruction cannot be regarded as erroneous in omitting to refer to an acceptance of a condition or contract, in proof of which no adequate evidence was offered.

The defendants also excepted to the following portion of the Judge's charge: "There is one other point which I think is raised by plaintiff's counsel in the case, and that is this; that even if you should find that there was an agreement and an understanding that a settlement was accomplished by these parties at the time, but yet that a mistake has been made concerning it as to the time, at $3.00 per day even; that this was not the amount due to him, and then that settlement would not cover that mistake. I give you that rule as plaintiff's counsel has argued it should be." It is evident from the testimony, and the verdict of the jury, that their finding was not influenced by this instruction. It was, therefore, harmless if erroneous.

Upon the motion, however, we are inclined to the defendants' contention as to the plaintiff's time upon the log hauler, and that the verdict should be cut down to $72.47 and interest from April 24, 1912 to September 10.

*Exceptions overruled.*

*Motion sustained unless within 30 days from the certifying of this case the plaintiff file a remittitur of the verdict to $72.47 and interest from April 24 ‿eptember 10, 1912.*